UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

KAROL B.,

                Plaintiff,

    v.

ACTING COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

Case No. 2:22-cv-01593-TLF

ORDER AFFIRMING DEFENDANT'S DECISION TO DENY BENEFITS

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) for judicial review of defendant's denial of plaintiff's application for disability insurance benefits ("DIB").

Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. Dkt. 5. Plaintiff challenges the Administrative Law Judge's ("ALJ's") decision finding plaintiff not disabled. Dkt. 1, Complaint.

I.     ISSUES OF REVIEW

1.     Whether the ALJ Erred at Step Five

2.     Whether the ALJ Properly Evaluated Plaintiff's Subjective Symptom Testimony

3.     Whether the ALJ Properly Evaluated Medical Opinion Evidence

II.     BACKGROUND

1

Plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits (DIB) on November 18, 2016, alleging a disability onset date of September 26, 2015. Administrative Record ("AR") 70-71, 88-89. Plaintiff last met the insured status requirements of the Social Security Act on September 30, 2020; therefore, the relevant period is between plaintiff's alleged onset date and her date last insured. AR 733.

Plaintiff's application was denied initially and on reconsideration. AR 86, 105. ALJ Keith Allred held a hearing on June 19, 2018 and issued a decision on September 21, 2018 finding plaintiff not disabled. AR 17-68. Pursuant to the stipulation of both parties, this Court ordered the ALJ's decision be reversed and remanded for further proceedings. AR 845-46.

ALJ David Johnson held a new hearing on remand on December 8, 2021 and a supplemental hearing on March 10, 2022 because much of the vocational expert's ("VE's") testimony during the December 2021 hearing was not recorded. AR 769-803, 1520-54. ALJ Johnson issued a decision on May 27, 2022 finding plaintiff not disabled between the alleged onset date through her date last insured. AR 728-68. In relevant part, the ALJ determined plaintiff has the residual functional capacity ("RFC") to perform a full range of work consisting of simple instructions and tasks and does not require more than occasional interaction with coworkers or the general public. AR 741.

Plaintiff now seeks judicial review of the ALJ's May 2022 decision. Dkt. 16.

III.   STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the Court may set aside the Commissioner's denial of disability benefits if it is based on legal error or not supported by substantial

evidence in the record. *See Woods v. Kijakazi*, 32 F.4th 785, 788 (9th Cir. 2022). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

IV.   DISCUSSION

A.  Whether the ALJ Erred at Step Five

Plaintiff contends the ALJ erred at step five by basing his findings on an unreliable VE testimony. Dkt. 16 at 3-8. Specifically, plaintiff argues the VE was "unable to articulate the methodology for the numbers of jobs in the publication [he] used," and thus the ALJ's reliance on the VE's testimony warrants remand. *Id*. at 5.

At step five of the sequential evaluation process, the ALJ has the burden of determining whether "the claimant can perform a significant number of other jobs in the national economy." *Ford v. Saul*, 950 F.3d 1141, 1148 (9th Cir. 2020). If the claimant is not able to do so, the ALJ must find the claimant disabled. *Id*. The ALJ can meet this burden by showing that there is other work in "significant numbers" in the national economy by utilizing the testimony of a VE. *See Lounsburry v. Barnhart,* 468 F.3d 1111, 1114 (9th Cir. 2006); *see* 20 C.F.R. § 404.1560(c)(2).

A VE's "testimony is one type of job information that is regarded as 'inherently reliable.'" *Ford*, 950 F.3d at 1160 (citing *Buck v. Berryhill*, 869 F.3d 1040, 1051 (9th Cir. 2017)). When uncontradicted, "a vocational expert's testimony may count as substantial evidence even when unaccompanied by supporting data." *Biestek*, 139 S. Ct. at 1155. Thus, "an ALJ is entitled to rely on a VE's testimony to support a finding that the claimant can perform occupations that exist in significant numbers in the national

1 economy." *Kilpatrick v. Kijakazi*, 35 F.4th 1187, 1192 (9th Cir. 2022). "Notwithstanding
2 the foregoing, VE testimony is not incontestable." *Buck*, 869 F.3d at 1051. For example,
3 a claimant may challenge the VE's "sources and methods—where [the VE] got the
4 information at issue and how [the VE] analyzed it and derived [the VE's] conclusions."
5 *Biestek*, 139 S. Ct. at 1156. A VE whose testimony is "so feeble, or contradicted would
6 fail to clear the substantial-evidence bar." *Id*. at 1155-56. Further, when there is a
7 conflict between the VE's testimony and the Dictionary of Occupational Titles ("DOT")[1],
8 the ALJ must "'determine whether the [VE's] explanation for the conflict is reasonable
9 and whether a basis exists for relying on the expert rather than the [DOT].'" *Buck*, 869
10 F.3d at 1051-52.

11       In the March 2022 hearing, in response to the ALJ's hypotheticals based on
12 plaintiff's RFC, the VE testified plaintiff is able to work as a janitor, hand packager, and
13 automobile detailer—all have a specific vocational preparation (SVP) level of 2 and thus
14 considered unskilled. AR 1529-30; Social Security Ruling 00-4p. The VE provided the
15 DOT numbers for each job. AR 1529-30. The VE also confirmed there was no conflict
16 between his testimony and the information in the DOT, and to the extent that there
17 were, the deviations were based on his 43 years as a vocational counselor. AR 1108-09
18 (VE's resume), 1529-30. When plaintiff's counsel asked the VE about the source for his
19 job estimates, the VE replied they were from U.S. Publishing, a private company. AR
20 1532. The VE explained U.S. Publishing provides a "crosswalk" that is applied to a
21 specific DOT code, which in turn, provides the number of jobs available within that code.

---

[1] The DOT is published by the Department of Labor and one of the databases the Social Security Administration has taken administrative notice as containing "reliable job information." *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001); 20 C.F.R. § 404.1566.

4

AR 1532-33, 1536. The VE further explained his final numbers are calculated by reducing the number of jobs under a specific DOT code by 25 percent, a practice based on his experience. AR 1539-43.

Reviewing the transcript, the Court finds the VE's testimony here satisfies the substantial evidence standard. The VE provided not only the underlying data as to his numbers, but also his calculation method. AR 1532-43; *Ford,* 950 F.3d at 1159 (a VE's "testimony still will clear (even handily so) the more-than-a-mere-scintilla threshold' even when the expert declines to provide the underlying data"). Further, when plaintiff's counsel disagreed with the VE's testimony about the skill levels of the jobs he testified to, the VE pointed to his 43 years of experience as a vocational counselor and personal experience as a trainer and supervisor. *Biestek*, 139 S. Ct. at 1152-53 (citing SSR 00-4p) ("[VEs] may invoke not only publicly available sources but also 'information obtained directly from employers' and data otherwise developed from their own 'experience in job placement or career counseling.'").

Plaintiff also takes issue with the VE's use of U.S. Publishing and his lack of knowledge about how the company derives its job numbers. Dkt. 16 at 5. Though U.S. Publishing is not expressly listed as one of the publications the SSA has taken administrative notice as providing reliable job information, 20 C.F.R. § 404.1566, this does not necessarily mean the VE could not rely on it. As defendant points out, the Ninth Circuit has stated that "VEs may use a wide range of data sources and methodologies to generate job-number estimates." *White v. Kijakazi*, 44 F.4th 828, 834 (9th Cir. 2022). Courts in the Ninth Circuit have also found in several instances a VE's use of U.S. Publishing acceptable, even when the VE could not answer questions about

how the company formulates its numbers. *See Tavarez v. Kijakazi,* No. 2:22-CV-09367-BFM, 2023 WL 4765561, at *3 (C.D. Cal. July 26, 2023); *Azizeh R. v. Kijakazi,* No. 20-cv-2016-MDD, 2021 WL 6072621, at *5-6 (S.D. Cal. Dec. 22, 2021) (collecting cases); *Shaibi v. Saul*, No. 1:18-CV-00056-BAM, 2019 WL 3530388, at *6 (E.D. Cal. Aug. 2, 2019), *aff'd,* 837 F. App'x 531 (9th Cir. 2021).

Plaintiff next contends the ALJ failed to address evidence contained in the memorandum submitted by her counsel after the hearing.[2] Dkt. 16 at 8-10. Plaintiff first argues the ALJ incorrectly stated that she did not object to the VE's qualifications at the hearing. Dkt. 16 at 8; AR 754.

A review of the transcript shows otherwise. At the start of the hearing, the ALJ asked plaintiff's counsel if he had "any objection to [the VE] testifying as a vocational *expert* today." AR 1527 (emphasis added). After plaintiff's counsel replied he did not "at this time," the ALJ then stated, "Okay, I'll find him qualified," and proceeded to inquire the VE with no further objection from plaintiff's counsel. AR 1527. At the conclusion of the hearing, plaintiff's counsel only objected to the "source and method that the VE used," not to the VE's qualifications as an expert. AR 1551. Plaintiff's argument therefore fails.

Plaintiff also argues the ALJ incorrectly found no conflict between the VE's testimony and the DOT, as the memorandum shows the jobs the VE testified plaintiff is

---

[2] The memorandum included the following objections: plaintiff's objection to the VE's source and methodology, plaintiff's counsel's contradicting job information and objection to the ALJ's evaluation of the medical opinions of the state agency psychologists. AR 1110-13. The first issue was already addressed by the Court and the third is discussed later in the decision, *infra*, Section IV.C. The Court will thus only address the alternative job information plaintiff's counsel provided.

1 able to do actually involve SVP levels of at least 3, rather than the level 2 the VE stated
2 during the hearing. Dkt. 16 at 8-9; AR 754, 1529-30.

3       The ALJ may have a duty to address the discrepancies between a VE's
4 testimony and a claimant's contradicting evidence when the "purportedly inconsistent
5 evidence is both significant and probative, as opposed to 'meritless or immaterial.'"
6 *Wischmann v. Kijakazi*, 68 F.4th 498, 505 (9th Cir. 2023). If the evidence is found
7 probative, the Court must remand the case so the ALJ can reconsider findings at step
8 five; if meritless, the Court must affirm the ALJ's findings. *Id*. at 506. The Ninth Circuit
9 has recently found a claimant's alternative job numbers to be probative when the
10 claimant provides more than just the name of the software program used and
11 demonstrates how the numbers were produced. *Id*. at 507. The Ninth Circuit has also
12 looked to whether the claimant replicated the methodology utilized by the VE during the
13 hearing, has the same expertise as the VE in calculating job numbers, and whether the
14 claimant is able to provide an interpretation of the data such that the numbers are
15 "meaningful to a court." *Id*. Although the evidence considered by the Ninth Circuit in
16 these recent cases have concerned job number estimates, as opposed to SVP levels,
17 the Court finds the analysis applies here.

18       The evidence at issue consists of three links leading to three O*NET Online
19 webpages—one for each job the VE testified to—and 23 pages of results from the
20 Occupational Research Survey ("ORS"). AR 1114-37. Plaintiff asserts that the materials
21 show the SVP levels for the jobs VE testified to are higher than level 2. Dkt. 16 at 8-9.
22 Thus, according to plaintiff, the VE's testimony conflicts with the ALJ's RFC assessment
23 that plaintiff be limited to only one third of interaction with coworkers or the general

public, as jobs with higher SVP levels require training for more than three hours during the day (and thus more interaction with others). *Id*.

The webpages have information about each job's requirements, while the ORS printouts provide "job-related information regarding physical demands; environmental conditions; education, training, and experience; as well as cognitive and mental requirements" for janitors and cleaners, packers and packagers, and cleaners of vehicles and equipment. AR 1114-37. The ORS printouts state that the data collection is funded by the SSA as part of its effort to develop a new system to replace the DOT. AR 1114, 1123, 1131.

But in reviewing both the webpages and the printouts, it is clear plaintiff's counsel did not use the same source or methodology as the VE. Second, they contain numerous values and data plaintiff's counsel makes no effort to explain. AR 1114-37. Even if plaintiff did provide such an explanation, plaintiff's counsel has not shown he possesses the same level of expertise in interpreting the number and type of jobs available in national economy as the VE, such that the Court might find his submission meaningful to his argument. In short, plaintiff's counsel has failed to show his post-hearing memorandum qualifies as probative evidence that would warrant a remand. *See Wischmann*, 68 F.4th at 507. Accordingly, the Court finds plaintiff's counsel's materials "do not give rise to the sort of inconsistency in the evidence that an ALJ is required to resolve." *Id*.

In sum, because the Court has found that the VE's testimony met the substantial evidence standard and the post-hearing memorandum plaintiff's counsel submitted is

not probative, the Court finds the ALJ did not err in relying on the VE's testimony at step five.

B.  Whether the ALJ Properly Evaluated Plaintiff's Subjective Symptom Testimony

Plaintiff assigns error to the ALJ's evaluation of her subjective symptom testimony. Dkt. 16 at 10-13.

Plaintiff testified she is unable to work due to depression, anxiety, and post-traumatic stress disorder ("PTSD"). AR 865. She stated she cannot be around people, and easily becomes irritated, frustrated, and angry. AR 866. Plaintiff also testified that due to her lumbar strain contusion, she cannot lift more than ten pounds, has neck pain, can walk for only three blocks, and stand for ten to 20 minutes. AR 867-60. She also testified she has headaches which leads to dizziness and falls. AR 868. In a function report, plaintiff wrote she has difficulties with lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, talking, hearing, stair climbing, seeing, her memory, completing tasks, concentrating, understanding, following instructions, using her hands, and getting along with others. AR 281.

The ALJ's determinations regarding a claimant's statements about limitations "must be supported by specific, cogent reasons." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (*citing Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990)). In assessing a plaintiff's credibility, the ALJ must determine whether plaintiff has presented objective medical evidence of an underlying impairment. If such evidence is present and there is no evidence of malingering, the ALJ can only reject plaintiff's testimony regarding the severity of his symptoms for specific, clear and convincing reasons.

*Ghanim v. Colvin,* 763 F.3d 1154, 1163 (9th Cir. 2014) (*citing Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). "The standard isn't whether our court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022). In this case, the ALJ provided several reasons to discount plaintiff's testimony, and at least one is valid and supported by substantial evidence.

        1.  Mental Health Symptoms

In discounting plaintiff's testimony regarding her mental health, the ALJ first found inconsistencies between her statements and the objective medical evidence. "Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) (citing *Johnson v. Shalala,* 60 F.3d 1428, 1434 (9th Cir.1995)). The ALJ took note of a mental evaluation from February 2017 where plaintiff was found to have difficulty with work functionalities due to her mental health. AR 742-43 (citing AR 596). However, the ALJ also pointed to plaintiff's mental status examinations showing her presentations were largely normal throughout the relevant period. AR 415, 469, 472, 588-90, 593-96, 717, 1232, 1237, 1253, 1279, 1370-71.

The ALJ also pointed to treatment notes showing plaintiff was often appropriately groomed and dressed, with generally appropriate eye contact, cooperative demeanor, and plaintiff was able to communicate effectively. AR 742 (citing AR 408-09, 411, 413, 415, 417, 421). At times, plaintiff was found depressed with an anxious mood or affect, but records cited by the ALJ show she was often cooperative with normal thought content and process, and she had intact attention, memory, concentration, judgment,

and insight. AR 745 (citing AR 469, 472, 588, 593, 717, 1233, 1237, 1253, 1279, 1370-71, 1395, 1406). Considering the normal findings in plaintiff's mental status examinations throughout the relevant period, the ALJ could reasonably discount plaintiff's testimony about her inability to interact with others, manage her temper, and difficulties with remembering tasks.

The ALJ also reasonably found plaintiff's statements negated by the treatment notes showing her symptoms improved with treatment, including therapy and medication. AR 475. Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for [social security disability] benefits," *Warre ex rel. E.T. IV v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006).

Most of plaintiff's therapy notes from 2016 and 2017 show she was actively involved in her sessions and was improving. AR 408, 409, 415, 417, 421, 567-68. The evidence cited by the ALJ shows after plaintiff was prescribed medication in June 2019, plaintiff denied suicidal intent or ideation, and she reported it resolved her feelings of helplessness and hopelessness, though she remained "quite anxious." AR 1370. Plaintiff was described as neither paranoid nor delusional; she did not exhibit a depressed mood; cognition and memory were normal. AR 1371. The record indicates that, a month after being prescribed medication, plaintiff reported no improvement with her depression and stated it caused dizziness. AR 1381. However, the record then shows plaintiff was doing better after being prescribed different medication; though she had an anxious mood, her affect was not angry, she was more affable, and she appeared less depressed. AR 1385, 1395.

The record also shows plaintiff herself continued to report improvement due to not only her new medication, but also due to her weekly therapy. AR 1405-06, 1416. The ALJ also noted that when plaintiff did report anxiety again, she simultaneously reported her difficulties with her housing situation, indicating external stressors triggered her condition. AR 1427-30. Given that the records cited by the ALJ show plaintiff improved with therapy and medication, and resurgences in her symptoms were caused by external stressors, the ALJ could reasonably find plaintiff's testimony as to the severity of her symptoms undermined by her record.

2. Physical Symptoms

In discounting plaintiff's testimony regarding her physical health, the ALJ similarly cited objective medical evidence, including treatment notes showing plaintiff had full range of motion in all her major joints, stable non-tender joints with no abnormalities, and no difficulties rising from a chair or the exam table. AR 598. The ALJ also highlighted plaintiff was found to have normal reflexes, no sensory deficits, and intact coordination. AR 590. With regards to plaintiff's statements about her walking limitations, the ALJ noted plaintiff's own report that she primarily used a cane for long distances and that she was able to make improvements in her walking and ability to ascend and descent stairs. AR 666, 1238. The ALJ also noted that outside of plaintiff's functional report, there was not much evidence to support her statements regarding her physical limitations. AR 746. The ALJ's assessment is reasonable, and plaintiff presents no other evidence to challenge the ALJ's finding.

3. Other Reasons

The ALJ also generally rejected plaintiff's testimony based on her activities of daily living. AR 747. An ALJ may reject a plaintiff's symptom testimony based on her daily activities if they contradict her testimony. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). Here, the ALJ permissibly contrasted plaintiff's reports of difficulties with self-management with treatment notes showing she often presented appropriately groomed and dressed, and plaintiff's ability to perform household chores and manage her finances. AR 278-79, 415, 469, 472, 588, 594-95, 708, 717, 1233, 1237, 1253, 1279, 1370-71, 1395, 1406. The ALJ also found plaintiff's statements about her inability to interact with others undermined by her ability to use public transportation, shop, volunteer, and attend church. AR 279, 308, 415, 747, 1427.

Plaintiff disputes the ALJ's evaluation, stating she went only to the grocery store once a month, to therapy, and to walk her dog. Dkt. 16 at 11. She also argues there is no record as to what her volunteering entailed, and that even though she attended church weekly, she spent most of her time in her room. *Id*. Yet, plaintiff's ability to partake in activities that involve social interaction directly contradicts her statements that she is unable to be around people. Further, "[e]ven if the claimant experiences some difficulty or pain, her daily activities 'may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.'" *Smartt*, 53 F.4th at 499 (quoting *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012)). Therefore, in discounting plaintiff's testimony based on these activities, the ALJ did not err.

1       Finally, the ALJ discounted plaintiff's testimony because the record indicates her inability to work is unrelated to disability. AR 745-46. The ALJ specifically pointed to plaintiff's statements that she stopped working as a caregiver in September 2015—the same month as her alleged onset date—after her client no longer needed her service. AR 861. Plaintiff also stated she did not attempt to resume working because of a legal issue pertaining to identity theft, and if it were not for these issues, she would have continued working. AR 861-64. An ALJ may make an adverse credibility determination based on plaintiff's statements. *See Bruton v. Massanari,* 268 F.3d 824, 828 (9th Cir. 2001) (affirming the ALJ's disregard of a claimant's testimony in part because claimant stated he left his job because he was laid off, rather than due to his injuries). When considered with the rest of the ALJ's evaluation, this reason further supports the ALJ's decision to discount plaintiff's testimony.

      In sum, by providing at least one reason, supported by substantial evidence, to discount plaintiff's testimony, the Court finds the ALJ did not err.

      C.  Whether the ALJ Properly Evaluated the Medical Opinion Evidence

      Plaintiff contends the ALJ erred in evaluating the medical opinion evidence, but does not challenge the ALJ's reasons for discounting any of the medical opinions in the record, Dkt. 16 at 14. The Court will not consider matters that are not "'specifically and distinctly'" argued in the plaintiff's opening brief. *Carmickle*, 533 F.3d at 1161 n. 2 (quoting *Paladin Assocs., Inc. v. Mont. Power Co.*, 328 F.3d 1145, 1164 (9th Cir. 2003)). As plaintiff solely argues the ALJ erred by giving weight to the medical opinions of state agency psychologists in favor of her examining physicians, the Court declines to discuss the rest of the ALJ's evaluation of the medical opinion evidence.

Plaintiff filed her application prior to March 27, 2017, therefore under the applicable regulations, an examining physician's opinion is "entitled to greater weight than the opinion of a non-examining physician." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (citations omitted); *see also* 20 C.F.R. § 404.1527(c)(1) ("Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you."); AR 70-71, 88-89. A non-examining physician's or psychologist's opinion may not constitute substantial evidence by itself sufficient to justify the rejection of an opinion by an examining physician or psychologist. *Lester,* 81 F.3d at 831 (citations omitted). However, "it may constitute substantial evidence when it is consistent with other independent evidence in the record." *Tonapetyan v. Halter,* 242 F.3d 1144, 1149 (9th Cir. 2001) (*citing Magallanes v. Bowen*, 881 F.2d 747, 752 (9th Cir. 1989)). "In order to discount the opinion of an examining physician in favor of the opinion of a non-examining medical advisor, the ALJ must set forth specific, *legitimate* reasons that are supported by substantial evidence in the record." *Nguyen v. Chater*, 100 F.3d 1462, 1466 (9th Cir. 1996) (citing *Lester,* 81 F.3d at 831).

State agency psychologist consultant Dr. Matthew Comrie opined plaintiff is able to perform simple tasks on a persistent basis and maintain focus for two hours at a time during the workday. AR 84. Dr. Comrie further opined plaintiff would work best with only superficial contact with the general public and coworkers and should not engage in collaborative tasks. *Id.*

State agency psychologist consultant Dr. Bruce Eather similarly opined plaintiff is limited to understanding and remembering "simple 1-3 step instructions standard work-like procedures, and regular work locations on a consistent basis in a competitive work

environment." AR 102-03. Dr. Eather further opined plaintiff is able to maintain concentration, pace, and persistence for up to two hours continuously, maintain adequate attendance, and complete a normal workday or workweek within normal tolerances of a competitive workplace. AR 103.

In giving weight to the opinions of the state agency psychologists, the ALJ found their opinions properly supported by their discussion of the medical record. AR 750. Weight given to the medical opinions of nonexamining physicians "will depend on the degree to which they provide supporting explanations for their medical opinions." 20 C.F.R. § 404.1527(c)(3). Here, both Dr. Comrie and Dr. Eather supported their opinions by reviewing plaintiff's medical records, completing a psychiatric assessment, and providing functional limitations as to plaintiff's understanding and memory, concentration and persistence, and social interactions. AR 79-84, 98-103.

The ALJ also found their opinions "generally consistent with the longitudinal record." AR 750. In doing so, the ALJ cited the same treatment notes cited in the evaluation of plaintiff's testimony. As discussed, plaintiff's record shows her symptoms improved with medication and therapy, and most of her mental status examinations displayed normal findings in her thought content and process, and intact attention, memory, concentration, judgment, and insight. AR 469, 472, 588, 593, 717, 1233, 1237, 1253, 1279, 1370-71, 1395, 1406.

Plaintiff argues both doctors "seem[ed] to have only reviewed" one examination and there is "uncertainty regarding the extent to which [Dr. Comrie and Dr. Eather]" considered her other records. Dkt. 16 at 14. But outside of this conclusory statement, plaintiff does not support her argument. Further, it is the ALJ's evaluation of plaintiff's

record that is under review before the Court, not the validity of the findings of plaintiff's medical sources. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)) ("We may reverse the ALJ's decision to deny benefits only if it is based upon legal error or is not supported by substantial evidence."). As the ALJ's assessment of the medical opinions of the state agency psychologists is reasonable, the Court finds no error with the ALJ's decision to give them weight over the medical opinions of plaintiff's treating and examining sources. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004) ("[I]f evidence exists to support more than one rational interpretation, [the Court] must defer to the Commissioner's decision.").

## CONCLUSION

Based on the foregoing discussion, the Court concludes the ALJ properly determined plaintiff to be not disabled. Therefore, the ALJ's decision is affirmed.

Dated this 25th day of August, 2023.

Theresa L. Fricke
United States Magistrate Judge